```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :
                               :
                               :
              v.               :  Case 1:01-CR-336-05
                               :
LAWRENCE JOHNSON,              :
     Defendant                 :


              TRANSCRIPT OF PROCEEDINGS
                    SENTENCING



          BEFORE:   HON. SYLVIA H. RAMBO, Judge

          DATE:     February 5, 2004

          PLACE:    Courtroom Number Three
                    Federal Building
                    Harrisburg, Pennsylvania



COUNSEL PRESENT:

WILLIAM BEHE, Assistant United States Attorney
   For - United States of America

KIRSTIN M. SWEIGARD, Esquire
   For - Defendant
```

**FILED**
**HARRISBURG**

DEC 2 2 2005

MARY E. D'ANDREA, CLERK
Per. _____
       DEPUTY CLERK

Vicki L. Fox, RMR
Official Reporter

THE COURT: Good morning, everyone.

MR. BEHE: Good morning, Your Honor.

MS. SWEIGARD: Good morning, Your Honor.

MR. BEHE: Your Honor, this is the matter of the United States of America versus Lawrence Johnson at Criminal Docket Number 01-336.

May the record reflect that the defendant is present in court with counsel, and now is the time and place set for sentencing in this matter.

There are some outstanding objections to the presentence investigation report which have been addressed by the Probation Office in an addendum to the presentence report that was prepared in December I guess of last year.

THE COURT: Mr. Johnson, you have reviewed the presentence report with your counsel?

THE DEFENDANT: Yes.

THE COURT: I wish to address the objections that have been made. First of all, there is an objection concerning the total drug amounts. Even at the calculation of marijuana equivalent of 3,293.38 kilograms, it would not change the offense level.

Do you agree with that?

MR. BEHE: Yes, Your Honor.

THE COURT: Secondly, the adjustment for role in the offense, he was charged only with what he himself was

found on him or in his person. Or in other words, his total responsibility is reflected by the amount that was found on him, not the conspiracy. So how can we diminish his role? He is charged with his own activity.

MS. SWEIGARD: Your Honor, the objection stems from, first of all, if you look at the original numbers the 8130.2 kilograms, as you stated the offense level does not change when you charge him just for the amount of substance that was on him.

The basis of the objection is this was an ongoing investigation in which my client was not a part of or to be investigated whatsoever.

My client was with Mr. Anthony that day, and they were ultimately going to the gym. And my client has maintained the entire time that he did not know Mari Anthony was bringing the drugs into the van when they left for the gym. There was some discrepancies about whether or not he knew what Mari was doing in the home that day.

But as far as when they left to go to the gym, my client had no knowledge that Mr. Anthony was bringing the drugs along until they got pulled over by the Officers. Even holding him to the 3,293.38 kilograms, that all was Mari Anthony's, and none of it was my client's. He didn't know it was there. It wasn't intended for his use or distribution. That is why we are asking for the downward

departure in his role in the offense.

The primary investigation was on Mr. Anthony, as well as Tyrone Smith, and not my client.

THE COURT: You are saying that the 3000 kilograms was not his?

MS. SWEIGARD: No, Your Honor. He admits that he voluntarily put it on his person when they got pulled over. Mari Anthony asked him to do something with this. He voluntarily put it on his person at that time at that split second.

THE COURT: That is what he is charged with.

MS. SWEIGARD: But it was not his. It was Mr. Anthony's. It was not my client's substance at the time he put it on. When they got pulled over by the Police Officers, Mr. Anthony requested that my client do something with it. And he did.

He had on a weight belt because they were on their way to the gym, and he stuffed it in the belt. It was a very bad decision, Your Honor, and I think that it is a decision that doesn't warrant possibly 20 years of his life.

THE COURT: What is your position on that, Mr. Behe?

MR. BEHE: Your Honor, the plea agreement was fashioned as Your Honor has correctly noted, to address Mr. Anthony's conduct on that particular day, that

particular occasion, and not as a participant in the overall conspiracy where the amounts were astronomical in terms of what the guideline calculations would be.

And the amounts I think have even been restricted further to what the defendant had on his person as opposed to even in the van or back at Mr. Anthony's home.

To the extent that he pled to an event that occurred on a particular day, that does seem to in itself address what his role in that day or that offense was by I guess restricting it to that particular event.

There is no doubt in what Ms. Sweigard says that the focus of the investigation was Mari Anthony and Tyrone Smith. And there is no doubt that nobody even knew that Lawrence Johnson existed. He wasn't even on the radar screen until that van was pulled over.

And since that time, and before that time, and on that day, we have not before then or have we since then come across anybody that says Lawrence Johnson was involved in drug trafficking. But the charge deals with his conduct on that day.

THE COURT: What about the acceptance of responsibility argument? Do you wish to argue that?

MS. SWEIGARD: Yes, Your Honor. And the argument essentially stems from the same set of facts. Perhaps somewhat different.

Johnson - Sentencing                                6

My client has never requested a trial in this case and essentially has accepted the fact that he had that amount of substance on him that day. Where the issue has come in, which I had briefly touched on earlier, was whether or not there has been some inconsistencies as to whether or not he knew Mari Anthony or stated that he knew that Mari Anthony was cooking drugs in the house that day.

Beyond that, my client has accepted the fact from the very beginning that he in fact did have that on his person and that he was guilty of having that on his person.

THE COURT: Mr. Behe?

MR. BEHE: Your Honor, the presentence investigation report has at paragraph ten, the defendant's account of the events. And in that, Mr. Johnson denied that he was selling drugs and admitted only that the Police found drugs when the van was pulled over.

He knew there were drugs at Mari's house, and that Mari was probably cooking that day, but not while he was there. Then when pulled over, the defendant Mari Anthony grabbed some drugs out of the bag, gave them to him to hide. He is not sure he resisted arrest, but the drugs came out afterwards.

Then that precedes paragraph eleven in which the defendant gave some conflicting statements and took a polygraph examination at the request of the United States,

and it shows what his responses were to that about whether he was withholding information about drugs that day and whether he knew there were drugs at the house.

 I suppose that had Mr. Johnson not said anything to anybody about what occurred that day or consented to interviews and simply came into court and admitted what occurred that day, he probably would have gotten acceptance of responsibility.

 I don't know why he is incapable of picking a version of events and sticking with it.  And I don't know whether the version that he has presented is of such great conflict that he should not get acceptance.  But he also hasn't spoken here today, and maybe something he would say to the Court today would persuade us regardless of his vacillation on the facts that he would be able to accept responsibility once and for all.

 THE COURT:  With regard to the adult criminal conviction, that objection is overruled because he was certified as an adult.

 And on the impact of the plea agreement, the plea agreement does not require the U.S. to support his sentence of ten years.  At least, I cannot find it.

 In fact at paragraph twelve on page five of the agreement, it says at the time of sentencing, the U.S. may make a recommendation that it considers appropriate based

upon the nature and circumstances of the case and the defendant's participation in the offense, and specifically reserves the right to recommend a sentence up to and including the maximum sentence of imprisonment and fine allowable to go with the costs of prosecution.

I am quite certain that I questioned him as to whether any promise had been made to him as to what his sentence would be.

MR. BEHE: I can state categorically that there were no side agreements or unstated promises as to a particular sentences. I can categorically state it because I never do it.

To the extent that there may have been conversations about what is your best estimate about what the guidelines might come out to in the best case scenario for Mr. Johnson or what could he be looking at if he cooperates and testifies or -- there were all sorts of conversations about that even to the point of suggesting this case go back to the County for prosecution if he were willing to cooperate.

But in terms of making a representation if you plead, I will get you a ten-year sentence, that just never happened. I don't think you are suggesting that either.

MS. SWEIGARD: No.

MR. BEHE: To the extent somebody might read this

and interpret it as what occurred or what was in the background, that just wasn't there.

THE COURT: I would like to hear from the defendant if you are willing to have your client speak on the issue of acceptance of responsibility.

MS. SWEIGARD: May I have one moment, Your Honor?

THE COURT: Yes.

(Ms. Sweigard confers with the defendant.)

THE COURT: While they are conferring, may I see you?

(The Court confers with Probation Officer Baker at the Bench.)

MS. SWEIGARD: Your Honor, my client is willing to speak to you on that issue.

THE COURT: Go ahead.

THE DEFENDANT: On April 24th, I went to Mari's house. I kind of had a suspicion that he was cooking up drugs or whatever, but I had no role in that. I left his house.

Driving on the highway, they pulled us over. He told me to hold some drugs for him. But in no way, shape or form did I have any part of helping him cook, bag, sell or anything. None of that. I guess that would be my part of accepting responsibility by pleading out to what I had to me on my person.

Johnson - Sentencing                                          10

THE COURT: Do you want to question him?

MR. BEHE: No. I have nothing to contradict that.

THE COURT: What is your schedule this morning? I would just like to take a recess and look at this role reduction for a few minutes?

MR. BEHE: I will be around, Your Honor.

THE COURT: Let's take a ten-minute recess.

THE CLERK: Court is in recess.

(A recess was taken.)

AFTER RECESS

THE COURT: Mr. Behe, I have a question to ask of you. I know that in the plea agreement you had at paragraph eleven, a recommendation of a two level reduction for acceptance of responsibility.

Was there a reason for the two instead of the three?

MR. BEHE: I believe that three would have been appropriate if he had come forward timely and told us all about his involvement and the involvement of others. He essentially never came forward until after the plea.

He took us through a suppression hearing in the particular matter. If it was appropriate that he receive a two level at all, that is why I recommended it. It doesn't, of course, mean the Court wouldn't find otherwise, but that

was the basis for the two level as opposed to the three level.

THE COURT: Here is what I am going to do. With regard to paragraph one, we will attribute to him -- excuse me -- not paragraph one, objection one, attribute to him the equivalent marijuana of 3,293.38 kilograms which does not change the offense level. I will give him a two point reduction for role in the offense, that being a minor. I will not go to minimal however.

For the acceptance of responsibility, we will give him a two point reduction.

With regard to the objection to the adult criminal conviction, I already addressed that. That objection will be overruled.

And the paragraph -- and the objection number five concerning the government's purported alleged support of a ten-year sentence of incarceration is not supported by the record. So that will then create an adjustment for an offense level of 30, criminal history of four for a guideline range of 135 to 168.

Do you wish to speak any further on his behalf?

MS. SWEIGARD: Your Honor, the only thing that I would ask is the family has asked that I request Your Honor if he can be placed as close to home as possible. He has three children and a mother and father with whom he still

has a relationship.

       THE COURT:  Where is that?

       MS. SWEIGARD:  Harrisburg.

       THE COURT:  Okay.  Do you wish to speak on your own behalf?

       THE DEFENDANT:  No.

       THE COURT:  Mr. Behe?

       MR. BEHE:  I have nothing to say, Your Honor.

       THE COURT:  AND NOW, this fifth day of February the year 2004, the defendant appearing in court for purposes of sentencing, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant Lawrence Johnson is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 135 months.

       The Court finds that the defendant has the ability to pay a fine below the guideline range and restitution.  Accordingly, it is further ordered that the defendant pay to the United States the sum of $1100.00 consisting of a fine of $500.00, a special assessment of $100.00 and community restitution of $500.00.

       Of the $500 restitution amount, $325.00 shall be paid to the Pennsylvania Victims Compensation Program and $175.00 shall be paid to the Pennsylvania Bureau of Drug and alcohol Programs at the addresses set forth in the presentence report.

Johnson - Sentencing                                    13

Said sums shall be paid through the Clerk of Court, are due in full immediately and are payable during the period of incarceration with any balance to be paid within three years of release from custody.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years. Within 72 hours of release from custody from the Bureau of Prisons, the defendant shall report in person to the Probation Office in the District to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions that have been adopted by this Court and with the following additional condition: Defendant shall pay any balance of the fine and restitution imposed by this judgment which remains unpaid at the commencement of the term of supervised release in minimum monthly installments of no less than $50.00.

Defendant shall submit to one drug test within 15 days of release from custody and at least two periodic drug tests thereafter.

The following statement of reasons is placed on the record for the sentence that has been imposed: The Court adopts the factual findings and the guideline application in the presentence report except the Court will grant him a two point reduction for acceptance of

Johnson - Sentencing 14

responsibility and a two point reduction for role in the offense bringing that to an offense level of 30, criminal history of four and imprisonment range of 135 to 168.

The fine is below the guideline range because of the defendant's inability to pay. The sentence is within the guideline range. That range exceeds 24 months.

The sentence is imposed for the following reasons: A sentence at the low end of the guideline range appears sufficient to achieve sentencing objectives.

Now, Mr. Johnson, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or that there was some other fundamental defect in these proceedings that was not waived by your guilty plea.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. You have ten days from this day in which to file a notice of appeal.

You may also request the Clerk of Court to prepare and file a notice of appeal on your behalf. If you cannot pay the costs of an appeal, you may apply for leave to appeal informa pauperis.

Are you Court-appointed?

MS. SWEIGARD: No, Your Honor, private.

THE COURT: If you do wish to take an appeal and

you can no longer afford to retain the services of your present counsel for purposes of appeal, the Court on proper application will consider the appointment of a Public Defender to represent you on appeal without cost.

       MR. BEHE: Your Honor, two matters. Since he pled to a superseding information, I would move for the dismissal of any prior indictment that pertained to this defendant. And I think that may have been --

       THE COURT: I think there was a second and a third. It would be the original indictment.

       MR. BEHE: He was charged only I believe in the --

       THE COURT: Second.

       MR. BEHE: -- second superseding indictment. He was not charged in the original or the first superseding indictment.

       THE COURT: So the second and third superseding indictment will be dismissed.

       MR. BEHE: One other matter.

       THE COURT: Wait a minute. I have a superseding information here.

       MR. BEHE: The Clerk's office requires us to call it a superseding information even though it is the first information that is filed. I don't know why.

       THE COURT: I will find out why.

Johnson - Sentencing                                          16

MR. BEHE: I have also asked that question. Just for docketing purposes, I think it is easier to keep track.

One other matter. I believe in Mr. Johnson's case, his plea agreement allowed for the possibility of appealing the adverse ruling on his motion to suppress. While he can be advised he can appeal his guilty plea and sentencing, that is another thing that is still available to you. Do you understand that?

THE COURT: Do you understand --

THE DEFENDANT: Yes.

THE COURT: -- you can also appeal that?

THE DEFENDANT: Yes.

THE COURT: All right.

MR. BEHE: Thank you.

MS. SWEIGARD: Your Honor, he has been incarcerated since April 24, 2002. I ask that appropriate credit is given.

THE COURT: That will have to be up to the Bureau of Prisons. I will recommend that he be incarcerated in an institution close to Harrisburg.

THE CLERK: Court is in recess.

(A recess was taken.)

AFTER RECESS

THE COURT: Mr. Johnson, I need to place on the record why this alteration of the sentence is necessary.

Johnson - Sentencing                                                17

Under 2D1.1(a)(3), the guideline says the offense level is set forth in subsection (c) except that if the defendant receives an adjustment under 3B1.2, mitigating role, the base offense level under that section should not be more than 30.

And then if you go to 3B1.3 -- excuse me -- 3B1.2, application note six, in a case in which the Court applied 2D1.1 and the defendant's base offense level under that guideline was reduced by operation of the maximum base offense level in 2D1.1(a)(3), the Court also shall apply the appropriate adjustment under this guideline.

I thought initially that the 2D1.1 was the base offense level and that to apply again the adjustment would have been double counting, but apparently it is not.

Do you have any different interpretation?

MR. BEHE: None that I can back up with any case.

THE COURT: It is totally out of --

MR. BEHE: It's like holding two mirrors up to each other. You just keep looking back and forth and further and further. I don't know. I suppose if you were at a level 31 and you had a two or four level reduction for the role in the offense and it only dropped you to 30, you would lose out on credit for an extra one or an extra three.

I am struggling for the rationale behind it, but --

Johnson - Sentencing                                             18

THE COURT: So was I because it does appear that it is double counting. The Probation Office reads it this way, too.

MR. BEHE: In addition to that, I suppose acceptance.

THE COURT: I have already given it to him so I have to stay with that. So that is going to reduce his total offense level to 26, category four, imprisonment range of 92 to 115 with a fine range of $12,500.00 to one million.

So in accordance with that, I have to adjust his sentence. So that sentence will now be: It is the judgment of the Court that the Defendant Lawrence Johnson is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 115 months.

In all other respects, the sentence is as previously imposed except that the reasons will now be a sentence at the high end of the guideline range appears sufficient to achieve sentencing objectives.

MR. BEHE: Thank you, Your Honor.

THE CLERK: Court is in recess.

(Whereupon, the proceedings were concluded.)

I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the trial of the above cause, and that this copy is a correct transcript of the same.

*Vicki L. Fox, RMR*

Vicki L. Fox, RMR

Official Reporter

The foregoing certification of this transcript does not apply to any reproduction by any means unless under the direct control and/or supervision of the certifying reporter.